UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Alonzo Harvin, # 157738, | ) C/A No. 5:14-1064-RMG-KDW |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) REPORT AND RECOMMENDATION |
| | ) |
| vs. | ) |
| | ) |
| Warden, Lieber Correctional Institution, | ) |
| | ) |
| | ) |
| Respondent. | ) |

Alonzo Harvin ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28

U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and

Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 16, 17.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of

the summary judgment and dismissal procedures and the possible consequences if he failed to

respond adequately to Respondent's Motion. ECF No. 18. Petitioner filed a Response in

opposition to Respondent's Motion. ECF No. 28. Respondent did not file a reply to Petitioner's

Response. Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.    Procedural History

Petitioner is currently incarcerated at Lieber Correctional Institution, part of the South

Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. In December 2004, a

1

Richland County Grand Jury indicted Petitioner on one count of first-degree burglary, one count of grand larceny, and one count of possession of crack cocaine. App. 543, 546.[1] A jury trial on the indictment was conducted before Judge Reginald I. Lloyd on August 1-3, 2005. App. 7-416. Attorneys Stacy Owings and LaNelle DuRant represented Petitioner, App. 29, and Attorneys Kathryn Luck Campbell and Daniel Goldberg represented the State of South Carolina at the trial. App. 30. The jury convicted Petitioner on the larceny and first-degree burglary charges, but acquitted him on the possession charge. App. 403-04. Petitioner was sentenced to life without parole on the burglary conviction and was given a concurrent five-year sentence on the larceny conviction. App. 414, 544, 547.

On September 12, 2007, Appellate Defender Kathrine H. Hudgins filed a brief on Petitioner's behalf. App. 548-58. The only point appellate counsel raised in the brief was,

> Did the trial court err in allowing a police officer to testify about his opinion in regard to similarities between a footprint found on the door of a burglarized house and the appellant's shoes when the officer was not qualified as an expert in footwear impression analysis?

App. 551.

The South Carolina Court of Appeals considered the appeal without oral argument and affirmed Petitioner's convictions in an unpublished opinion filed on March 24, 2008. App. 573-74. *State v. Harvin*, No. 2008-UP-201 (S.C. Ct. App. March 24, 2008).

Petitioner filed a post-conviction relief ("PCR") application on December 17, 2008, App. 431-38, raising the following points (quoted verbatim):

> Ineffective of Trial Counsel for failing to motion to suppress evidence, that has know [sic] documented or recorded statement that such evidence was place into

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 16-1 through 16-5.

> evidence as evidence related to the charge crime . . . Ineffective of trial counsel for failing to object to evidence of weapons being introduce at trial, when evidence was not listed as evidence related to the charge crime . . . ineffective of trial counsel for failing to aply [sic] common laws and statutory code necessary to put the state to its burden of proof . . . ineffective of trial counsel for failing to impeach the witness.

App. 436; *Harvin v. State*, No. 2008-CP-40-08865.

The State filed its return to the PCR application on July 7, 2009. App. 439-45.

Petitioner filed three separate amendments to his PCR application on November 2, 2009, App. 446-66, on August 10, 2011, App. 467-69, and on August 16, 2011, App. 470-75.[2] In his November 2009 amendment, he expanded on his original PCR points by adding the following statements (quoted verbatim):

> Based on Trial Counsel's negligence Applicant contends that Counsel failed to conduct any pretrial discoverys [sic], combined with Trial Counsel's failure to move for suppression rendered Trial Counsel's representation ineffective. See Morrison v. Kimmelman, 579 Supp. 796.

App. 446.

> Trial counsel was ineffective for failing to object to the admission of States Exhibit numbers 20 and 21, due to the insufficiency of its chain of custody.

App. 461.[3]

Petitioner also added legal argument on his original PCR ground regarding trial counsel's alleged ineffectiveness for failing to "apply common laws and . . . put the state to its burden of

---

[2] The stated amendment dates are taken from the Richland County Clerk of Court's filing stamps shown on the copies of the amendments contained in the appendix. ECF No. 16-1 through 16-5.

[3] The discussion contained in the amendment discloses that Petitioner was referring to trial counsel's failure to move to suppress photographs of two guns that were found by law enforcement in the van in which Petitioner was riding when he was arrested. App. 446-54, 461-65.

proof," App. 456-57, and about the trial court's failure to enter a directed verdict, which he asserted violated "due proces," and which he labeled " an abuse of discretion." App. 467-69. The August 16, 2011 amendment added the following point (quoted verbatim): "Ineffective Assistance of Appellate Counsel," App. 470, and contained argument regarding appellate counsel's failure to raise the trial court's denial of Petitioner's post-trial motion for directed verdict as a point in his direct appeal. App. 470-74.[4]

An evidentiary hearing was held August 29, 2011 in Richland County before the Honorable James R. Barber, III. App. 476-527. Attorney Linda Amason represented Petitioner and Assistant Attorney General Brian Petrano represented the State at the hearing. App. 476. Petitioner, Richland County Sheriff's Department Investigator Jerry Russell, and Petitioner's trial counsel Attorney Stacy Rowell (formerly Owings) testified at the hearing. App. 477. In his PCR testimony, Petitioner stated that his trial counsel was ineffective because she did not object to the introduction at trial of photographs of two guns that were alleged to have been stolen in the burglary for which he was convicted or challenge the chain of custody of those two guns. App. 480-81. He also testified that his appellate counsel was ineffective for not raising the trial court's denial of his motion for directed verdict as a point in his direct appeal because, according to Petitioner, the State did not produce sufficient evidence to prove that he broke into the victims' home. App. 482-83. Investigator Russell testified that he did not attempt to test the two guns for fingerprints because he thought they were too dirty to show any viable prints and that

---

[4] The PCR court indicated in a footnote in its dismissal order that the November 2, 2009 pro se amendment was "not properly before this Court" because Petitioner was represented by counsel at that time. App. 529. There is no reference in the PCR court's order to the two other amendments filed in August 2011 and the court addressed the ineffective assistance of appellate counsel claim in his order. App. 538.

the fingerprint powder could ruin the scope on a gun. App. 489-92.

Petitioner's trial counsel testified that she did not object to the introduction of the photographs of the guns or move to suppress them because they depicted the surroundings of where Petitioner was arrested, and she did not know any legal grounds that she would be able to use to suppress the photographs or to object to the allegedly inadequate chain of custody of guns that were not introduced into evidence. App. 496. Trial counsel acknowledged that the State did not introduce the guns or the proof of ownership of the guns about which the trial witnesses testified into evidence, App. 494-95, and that she did not think that she needed to cross examine the alleged victim about where the guns were purchased because she did not "understand why where they were purchased was relevant." App. 503, 512. She explained that it was her usual practice as a defense attorney to try to avoid bringing guns into a courtroom because she considered that to be a prosecutor's tool   to "scare" the jury and she did not think it would have helped Petitioner's case to force the guns to be introduced into evidence. App. 496-97, 519. Trial counsel responded to PCR counsel's questions about why she did not object to more of the State's leading questions by saying that "[y]ou don't want to hack off your jury . . . ." App. 505. Trial counsel testified on cross examination that she did not ask more or different questions to impeach the testimony of the State's witnesses about the ownership and value of the guns because she believed it is better to not ask questions if the attorney does not know what the answer would be and thought it would be better to argue points about missing evidence to the jury. App. 520. Trial counsel testified that a "big portion" of her argument to the jury was the lack of direct proof of ownership of the guns. App. 513. She also testified on cross examination that  she consulted with a shoe-print expert before trial, but that his review of the State's

5

footprint evidence was inconclusive and she did not think he would help Petitioner's case. App. 518, 522. Trial counsel also testified that she emphasized the absence of guns from the trial and the lack of documentary evidence of ownership of the guns in her closing argument to the jury. App. 513, 519.

The PCR court issued an order dated September 27, 2010,[5] dismissing Petitioner's PCR application. App. 529-41. The PCR court issued the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. § 17-27-80 (1985).

The Applicant testified at the PCR hearing, the Applicant pursued his claim of ineffective assistance of trial counsel, claiming that trial counsel was ineffective and should have had the photographs suppressed and that counsel was ineffective for failing to challenge the State regarding the chain of custody of the weapons. The Applicant claimed that while trial counsel did challenge the ownership of the guns to some extent, she could have challenged the value of the guns. The Applicant also claimed that appellate counsel should have argued the directed verdict issue, i.e. that the trial court erred by denying the trial counsel's directed verdict motion. The Applicant explained the procedural history and his involvement in the case. The Applicant testified that he came into possession of the guns but that he never entered the victim's home. The Applicant explained that his intent was to sell the guns.

Richland County Sheriff's Department crime Scene Investigator Jerry Russell (CSI Russell) testified that he did not recover any fingerprints on the victim's weapons that were in the Applicant's van. CSI Russell explained that he

---

[5] This date appears to be the result of clerical error because the copy of the order in the Appendix has a Richland County Clerk of Court filed stamp dated October 3, 2011 and the PCR was hearing was conducted on August 29, 2011. App. 476, 528. Apparently the dismissal order was actually signed on September 27, 2011, not 2010.

6

did not attempt to "dust" the weapons for fingerprints because in his professional opinion it was unlikely any prints could be recovered. CSI Russell explained that the weapons were in excellent shape but for their presence in the Applicant's oily and dusty van. He explained that it was "drizzly" that day and that graphite print powder could ruin those guns. He explained that is why he did not check them for prints, i.e. it was unlikely that any prints would be recovered considering the circumstances and that the potential harm to the weapons was too great. He also explained that he does not remember whether the ballistics unit checked the weapons before they were ultimately returned to the owner.

Trial counsel testified that the guns were obviously a very important part of the case. Trial counsel explained that the weapons themselves were never entered into evidence and that they had been returned to the victim prior to trial. Trial counsel explained that the only evidence of the weapons at trial were the photographs of the weapons as found in the Applicant's van and the testimony of the victim and the investigators. Trial counsel explained that she saw no grounds to support a motion to suppress the evidence of the weapons. Trial counsel explained that while she did have subpoena power she would not want to help the State's case by putting the weapons into evidence. Trial counsel explained that in her experience waiving [sic] the guns around the courtroom is a solicitor's tactic. Trial counsel testified that [apart from cross examination] no investigation was done as to whether the witnesses were fabricating the existence/ownership of the guns.[5] The Applicant questioned trial counsel as to several issues in the transcript. For example, trial counsel explained that she could have mentioned the testimony of one of the witnesses that saw individuals that could have been the burglars walking from the victim's house but that the witness did not see the burglars carrying anything, i.e. weapons. *See* transcript, p. 125. Trial counsel explained that the victim testified and identified the weapons he saw in the Applicant's van as his own. (Trial transcript, p. 171). Trial counsel explained that the victim also had receipts that verified the serial numbers of the weapons. (Trial transcript, p. 177). Trial counsel acknowledged that the receipt was never offered in as evidence but that the original value of the weapons was not her primary concern because the first degree burglary was the LWOP offense the State was really pursing [sic] in the case. Trial counsel explained that her main theme in argument was going to be that the State failed to prove that the weapons were the victims['].  Counsel explained that she was weary [sic] of asking too many questions of law enforcement as to how they verified that the weapons belonged to the victim. Her technique is obvious, i.e the "one question too many" dilemma could thwart her from keeping the issue vague and arguing a lack of evidence to the jury.[6] Trial

---

[5] This Court notes that while not entirely credible as to the origin, the Applicant himself conceded that he had possession of the weapons in his van when he was stopped by law enforcement.

[6] The Applicant did not explain how any different questions would have revealed anything favorable to his defense, i.e. the Applicant has not satisfied is

7

counsel explained that the Applicant told her that he found the guns on the side of the road, consistent with his testimony at the PCR hearing that he was going to sell the weapons. Trial counsel testified that she had an expert for the shoe print issue but that expert warned her not to call him to testify because his ultimate testimony [albeit on cross] would probably support the State's expert's opinion.

In a post-conviction relief action, the Applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674, 692 (1984); Butler, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C. 441, 334 S.E.2d 813 (1985). The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625, (citing Strickland). Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625. As discussed throughout, the Applicant has failed to carry his burden in this action. Therefore, this Court finds that the application must be denied and dismissed.

Beyond reviewing the undisputed procedural history, this Court finds Applicant's testimony not credible.[7] Trial counsel's testimony is both credible

---

burden and proven any sort of prejudice regarding trial counsel's method of examination. This is not to say that her performance was in any way deficient. "A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." Strikland v. Washington, 466 U.S. 668, 670, 104 S. Ct. 2052, 2056, 80 L. Ed. 2d 674 (1984).

[7] For the purposes of the record, this Court finds specifically that the Applicant was not credible when he testified that he simply "found" the weapons on the

and well reasoned. Accordingly, this Court finds Applicant has failed to prove the first prong of the <u>Strickland</u> test – that counsel failed to render reasonably effective assistance under prevailing professional norms. This Court also finds Applicant has failed to prove the second prong of <u>Strickland</u> – that he was prejudiced by counsel's performance.

This Court finds that the Applicant's claim regarding ineffective assistance of appellate counsel to be without merit. The Applicant claims that appellate counsel was ineffective for failing to argue that the trial court improperly denied his directed verdict motion. (Trial transcript, p. 314). On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. <u>State v. Lollis</u>, 343 S.C. 580, 583, 541 S.E.2d 254, 256 (2001); <u>State v. Burdette</u>, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999); <u>State v. Kelsey</u>, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998). When ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence, not its weight. <u>Burdette</u>, 335 S.C. at 46, 515 S.E.2d at 531; <u>State v. Wakefield</u>, 323 S.C. 189, 197, 473 S.E.2d 831, 835 (Ct. App.1996). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury." <u>Lollis</u>, 343 S.C. at 584, 541 S.E.2d at 256. "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." <u>State v. Rosemond</u>, 356 S.C. 426, 429, 589 S.E.2d 757, 758 (2003). The trial court clearly had ample evidence to base the denial of the directed verdict motion. *See* Trial transcript, p. 315.

Regarding the Applicant's arguments as to the supposed weakness of the "chain of custody," this Court notes that weapons are not a fungible item and a strict chain of custody is not required. <u>State v. Freiburger</u>, 366 S.C. 125, 620 S.E.2d 737 (2005). Nevertheless, the weapons were never introduced into evidence.

Finally, as explained throughout the order, there was no deficient performance regarding the weapons. The weapons were found in the Applicant's van minutes after an eye-witness to the burglary saw the broken in door and noted the license plate to the police. There is no requirement that the weapons need be placed into evidence, in addition, trial counsel explained that she would not want weapons in the courtroom because it negatively impacts the jury. The Applicant has failed to satisfy his burden of proof and demonstrate any deficient performance or any prejudice.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes that the

---

side of the road.

Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Counsel was not deficient in any manner, nor was Applicant prejudiced by counsel's representation. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

Except as discussed above, this Court finds that the Applicant failed to raise the remaining allegations set forth in his application at the hearing and has, thereby, waived them. As to any and all allegations that were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this Order, this Court finds Applicant failed to present any probative evidence regarding such allegations. Accordingly, this Court finds that Applicant waived such allegations and failed to meet his burden of proof regarding them. Accordingly, they are dismissed with prejudice. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. Janasik v. Fairway Oaks Villas Horizontal Property Regime, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." Lyles v. BMI. Inc., 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issue [sic] at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

This Court cautions the Applicant that he must file and serve a notice of appeal within thirty (30) days from the receipt by counsel of written notice of entry of judgment to secure the appropriate appellate review. See Rule 203, SCACR. Pursuant to Austin v. State, 305 S.C. 453 (1991), an Applicant has a right to an appellate counsel's assistance in seeking review of the denial of PCR. Rule 71.1(g), SCRCP, provides that if the applicant wishes to seek appellate review, PCR counsel must serve and file a Notice of Appeal on the Applicant's behalf. Applicant and counsel are directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

App. 534-41 (footnotes in original).

A notice of appeal seeking review of the PCR court's final judgment was submitted on Petitioner's behalf to the South Carolina Court of Appeals on or about November 9, 2011. ECF No. 16-10. South Carolina Appellate Defender Breen Richard Stevens filed the petition for writ of certiorari with the South Carolina Supreme Court as a "*Johnson* Petition" and requested to be

relieved as counsel for Petitioner. ECF No. 16-11; *see Johnson v. State*, 364 S.E.2d 201 (1988) (appointed appellate counsel may move to withdraw from representation after certifying a belief that the petition counsel filed is without merit). The petition for writ of certiorari raised the following issue quoted verbatim:

> Whether the PCR court erred by holding Counsel's performance was not deficient where Counsel failed to seek exclusion of photographs depicting two guns allegedly stolen by Petitioner, and where Counsel agreed that matters involving the guns would be very important to the case?

*Id*. at 3.

On July 6, 2012, the South Carolina Supreme Court informed Petitioner of the filing of the *Johnson* petition and told him that he could submit a pro se response to the petition. ECF No. 16-12. Petitioner filed a pro se brief on or about August 13, 2012, raising the following point, again quoted verbatim:

> THE TRIAL COURT ERRED BY NOT FINDING APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILURE TO RAISE ISSUE OF DIRECT VERDICT PURSUANT TO STATE V. MITCHELL, 535 SE2D 126 (2001) AND JACKSON V. VIRGINIA, 99 S. Ct. 2781 (1980) THAT THE TRIAL COURT REFUSED TO GRANT.

ECF No. 16-13 at 3.

The South Carolina Supreme Court denied the petition and granted counsel's motion to withdraw from representation on November 7, 2013. ECF No. 16-14. The appellate remittitur issued on December 3, 2013. ECF No. 16-15.

    II.    Discussion

        A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Trial court err in failur to grant a Directed Verdict. . . . During

11

the course of trial of Burglary state presented no evidence to support its cause of action, no one saw petitioner inside victims home. Eye witness testify no seeing petitioner inside victim home - nor in victim yard. Did not identify the race nor gender of petition Did not see Petitioner carrying anything. Crime scene Report no fingerprint of petitioner was found.

. . . .

GROUND TWO: Ineffective Assistance of Appellet counsel . . . During the course of trial state offered no proof that petitioner actually entered the victim home. Facutial conclusion has no evidence to support. Counsel choose the least likely for sucess. While counsel did raise a issue such issue bore no weight nor Relevtion. Failure to raise most strongest of Directed Verdict prejudice petitioner. Direct Verdict wood likely resulted in a new trial

. . . .

GROUND THREE: Ineffective assistence of trial counsel . . . Trial counsel failure to motion the courts to suppress evidence of photograp of weapons. Where photograph of weapons bare no chain-of-custody nor serial number

. . . .

GROUND FOUR: Ineffective assistance of trial counsel . . . Trial counsel was ineffective for failur to impeach the witness.

Pet. 5-10, ECF No. 1.

> ### B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

12

materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### C.    Habeas Corpus Standard of Review

#### 1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

13

unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

### a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). Recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at _, 131 S. Ct. at 786-87. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." 131 S. Ct. at 786. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an

14

unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.      Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of

15

counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at _, 131 S. Ct at 788 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399

16

(internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at _, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody

17

pursuant to the judgment of a State court, shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the

applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

19

the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See*

20

*Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

21

3.      Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id.*

III.    Analysis

A.      Waived Grounds

1.      The Parties' Positions

Respondent contends that neither Petitioner's Ground Three (regarding trial counsel's failure to move to suppress photographs) nor Ground Four (regarding alleged failure to impeach unknown witnesses) presents a basis for this court to grant habeas relief on the merits. ECF No. 16 at 34-41. Insofar as Ground Three is concerned, Respondent asserts that the PCR court's rejection of Petitioner's claims that his trial counsel provided ineffective assistance with regard to the admission at trial of photographs of two guns that were found in Petitioner's van and that were alleged to belong to the victim of the burglary and grand larceny of which Petitioner was convicted comports with established Federal law and is a reasonable application of that law. *Id.* at 34-38. With regard to Petitioner's Ground Four, Respondent contends that the Ground is too vague for this court to address because it fails to identify the "witness" who trial counsel allegedly failed to impeach. *Id.* at 38. Respondent also asserts that Petitioner's trial counsel's professional determination of the scope of her cross examination of any witness was entitled to significant deference as an acceptable tactic and, as such, the PCR court properly rejected

Petitioner's claim of ineffectiveness in her examination of any witness. *Id.* at 40-41. Petitioner does not respond to Respondent's argument or otherwise specifically reference either of these Grounds in his Response to the Motion for Summary Judgment.    Petitioner's Response to the Motion for Summary Judgment contains argument only on his Grounds One and Two, which raise due-process and ineffective-assistance-of-appellate-counsel issues relating to the trial court's denial of his motion for directed verdict. ECF No. 28.

Because he presents no response to Respondent's Motion for Summary Judgment on Grounds Three and Four in his Petition, the undersigned finds that Petitioner has waived both of these grounds. *See Petrucelli v. Dep't of Justice*, No. 11–1780(RBW), 2014 WL 2919285, at *7 (D.D.C. June 27, 2014) (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107 and holding that lack of response to a point raised in a motion for summary judgment amounts to a concession of that point) (D.D.C. 2008); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). As a result of Petitioner's waiver, the undersigned will address the merits of only Grounds One and Two below. However, it is true, as Respondent argues, that the State was legally entitled to introduce photographs of  the guns that were recovered from Petitioner's van, *see United States v. Ingram*, 28 F.3d 1211, *3 (4th Cir. 1994) (unpublished opinion; no requirement to introduce actual firearm for a possession conviction); *see also United States v. Miller*, 529 F. App'x 331, 335 (4th Cir. 2013) (photographs of a firearm constitute substantial evidence supporting sentencing enhancement for possession of the firearm); *United States v. Sanchez-Guzman*, 395 F. App'x 8, 9 (4th Cir. 2010) (photographs of a firearm are admissible to  support a finding of possession of the firearm), and trial counsel was

not ineffective for failing to move to suppress those photographs or to object to their introduction at trial. *See State v. Freiburger*, 620 S.E.2d 737, 741-42 (S.C. 2005) (because firearms are "non-fungible," chain of custody is not important and testimony identifying the item by its "unique characteristics" is sufficient). Also, the scope and conduct of cross examination is generally considered a reasonable trial tactic and entitled to deference by reviewing courts. *See Emmett v. Kelly*, 474 F.3d 154, 171 (4th Cir. 2007) (finding no prejudice to petitioner from counsel's trial strategy not to call certain witnesses in mitigation); *Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's "plausible strategic judgments.") (quoting from *Bunch v. Thompson*, 949 F.2d 1354, 1364 (1991)).

Accordingly, the undersigned recommends that Grounds Three and Four as stated in the Petition be dismissed and that Respondent's Motion for Summary Judgment on these grounds be granted.

> **B.      Merits Analysis: Grounds One and Two, Due-Process Violation in the Trial Court's Denial of Directed Verdict and Ineffective Assistance of Appellate Counsel for Failure to Make This a Point on Direct Appeal.**
>
> **1.      The Parties' Positions**

Because of their intertwined issues, the undersigned addresses the merits of Petitioner's claims that his due-process rights were violated by the trial court's denial of his motion for directed verdict and that his appellate counsel was ineffective for failing to raise this point in his direct appeal together in this portion of the Report.   Respondent initially contends that Ground One is procedurally barred because it was not raised as a point in Petitioner's direct appeal. ECF No. 16 at 22-24. Respondent also contends on the merits that the PCR's courts determination on

Petitioner's directed-verdict issue does not present a basis for federal habeas relief because there was more than sufficient evidence presented at Petitioner's trial to send the issue of his guilt of first-degree burglary and larceny to the jury. *Id*. at 26-31. Respondent further contends that because the trial court properly denied Petitioner's motion for directed verdict due the presence of substantial evidence to the support a jury verdict of guilty, then the PRC court's determination that appellate counsel was not ineffective for failing to make the trial court's denial of that motion a point in Petitioner's direct appeal was proper. *Id*. at 32-34.

Petitioner responds that the PCR court's decision on his directed-verdict claim is unreasonable because the State's primarily circumstantial evidence against him only supported a "suspicion" of his guilt. ECF No. 28 at 1, 6, 8, 9. Petitioner contends that the State's evidence at trial was insufficient to prove that he ever entered the allegedly burglarized home or to prove his identity as the burglar because no chain of custody, ownership, or value was established with regard to the allegedly stolen guns and because the investigator's testimony about the shoe print found at the burglary scene was improper and should have been excluded. *Id*. at 3-7. He alleges that the absence of any competent circumstantial or forensic or other direct evidence placing him at the scene of the crime rendered the trial court's denial of directed verdict "based on factual conclusion without evidence to support." *Id*. at 11. Based on the same contentions of lack of substantial evidence to support his convictions, Petitioner further contends that the PCR court's determination that his appellate counsel was not ineffective was unreasonable. ECF No. 28-1at 4-5, 7.

> 2.    Petitioner Was Not Denied Due Process When the Trial Court Denied His Motion for Directed Verdict and Appellate Counsel Was Not Ineffective

25

As an initial matter, though not explicitly argued on "due-process" grounds, both Petitioner and his PCR counsel clearly articulated arguments based on the trial court's denial of the motion for directed verdict and the alleged lack of substantial evidence to support the convictions at the PCR hearing. App. 483, 523-24. Although, the PCR court's judgment is primarily couched in terms of ineffective-assistance claims, the *Johnson* petition submitted in his PCR appellate-review process and Petitioner's pro se brief in that proceeding sufficiently exhausted this issue. ECF Nos. 16-11, 16-13. It is, therefore, properly before this court for consideration. *See, e.g., Goins v. Stevenson*, No. 4:08–cv–03916–RBH , 2010 WL 922774, * 11 n. 2 (D.S.C. March 9, 2010) (specific habeas grounds may be exhausted through *Anders* briefs and *Johnson* petitions); *Missouri v. Beckwith*, No. 9:08–2878–SB, 2009 WL 3233521, * 12 (D.S.C. Sept. 29, 2009) (same); *Ehrhardt v. Cartledge*, No. 3:08–2266–CMC–JRM, 2009 WL 2366095, * 9-10 (D.S.C. July 30, 2009) (same). Moreover, Petitioner has consistently contended that his motion for directed verdict was improperly denied and that appellate counsel should have raised the issue on direct appeal. App. 467-69 (amendment to PCR application); App. 482-83 (PCR testimony); ECF No. 1 at 6-7 (habeas Petition). Therefore, the undersigned finds, contrary to the State's contention, Petitioner's Ground One is not procedurally bypassed and will address the merits of both Grounds One and Two herein.

Citing to the page of the trial transcript that contains the State's argument against Petitioner's motion for directed verdict and the trial court's oral ruling denying the motion, App. 315, the PCR court found that Petitioner's contentions that his appellate counsel was ineffective were "without merit." App. 538. The PCR court determined that there was "ample evidence" presented to support the trial court's denial of the motion and submission of the case against

Petitioner to the jury. App. 538. Thus, although couched in terms of an ineffective-assistance claim, by ruling that the trial court's denial of the motion was proper, the PCR court impliedly determined that Petitioner's due-process rights were not violated by the trial court's ruling.

Allegations of insufficiency of evidence to convict made in a federal habeas corpus action are considered to be claims of denial of due process. *See Pope v. Netherland*, 113 F.3d 1364, 1368 (4th Cir. 1997) ("Any challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction") (citing *Jackson v. Virginia*, 443 U.S. 307, 321 (1979) and *In re Winship*, 397 U.S. 358, 364 (1970)). Such claims are cognizable in habeas actions in this court, however, our review in this area is "'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). The *Wilson* court determined that district courts are required to give significant deference to the state court's ruling on motions for directed verdict and similar challenges to the sufficiency of evidence to convict because "[f]ederal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review."155 F.3d at 405-06. This deference requires this court to consider that "a defendant is entitled to relief only if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).

While the PCR court did not specifically discuss the each piece of evidence that supported the trial court's ruling on the motion, its citation to the transcript page containing the State's argument against the motion indicates an agreement with the State's argument and the trial court's ruling. The State argued and the undersigned's review of the trial transcript shows

that, within minutes of the reported burglary, Petitioner was found in possession of the burglary victims' guns while driving a van that matched the description and bore the license plate reported to police by an eyewitness to the immediate aftermath of the burglary. App. 315. The PCR court specifically found that Petitioner's claim that he simply found the guns on the side of the road was not credible. App. 535 n.5. This determination is entitled to great deference by this court in this habeas action. *See Wilson v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). In ruling on Petitioner's motion for directed verdict, the trial judge stated: "Taking in the light most favorable to see the point, I'm going to respectfully deny the motions and let it go to through the jury." *Id.*

The undersigned has reviewed the transcript of Petitioner's trial and it shows that the person who reported the burglary of the house next door to hers saw a white van parked near the burglarized home and she took down the license plate number from the tag on the van. App. 105-07. She discovered the victims' back door had been kicked in and saw two individuals walking behind the burglarized house and then get into the van and drive off. App. 107-09. Within minutes of the eyewitness' burglary report to law enforcement, Petitioner and his co-defendant, who were riding in a van that completely matched the description given by the eyewitness on the same road where the burglary occurred, were stopped by officers. Two guns, later identified as having been taken from the burglarized home, were found in the van. App. 131-32, 133, 136. Trial testimony disclosed that when one of the homeowners went to the scene of Petitioner's arrest and looked into the van, he told the officers that the guns belonged to him

28

and subsequently provided written proof of ownership of the guns. App. 136, 172, 177. The same homeowner testified at Petitioner's trial and specifically claimed ownership of the guns and stated they were worth "about $ 1200" together. App. 172-73. This evidence, though circumstantial for the most part, was sufficient to send the issues of whether Petitioner entered the victims' home and the ownership and value of the guns to the jury for determination. Petitioner's contentions that such evidence merely raised a suspicion of his involvement in the burglary and was insufficient to support the jury's verdict in his case are not correct.

Having reviewed the parties' submissions to the court and both the trial and PCR transcripts and giving the trial court's determination on the sufficiency of the evidence to convict the significant deference to which it is entitled under applicable federal law, the undersigned agrees with Respondent's position in this matter. There was sufficient substantial evidence of Petitioner's guilt to go the jury and Petitioner has not shown that he was denied due process at his trial. *See* 28 U.S.C. § 2254(e)(1) (to be entitled to habeas relief, petitioner must prove by clear and convincing evidence that the state court unreasonably determined the facts in light of the evidence presented in state court). Further, because the trial court properly denied Petitioner's motion for directed verdict, Petitioner's appellate counsel was not ineffective for failing to raise that denial as a point in his direct appeal.

Accordingly, Petitioner's Grounds One and Two as stated in the Petition should be dismissed and Respondent's Motion for Summary Judgment on those grounds should be granted.

IV.     Conclusion

The undersigned has considered each of Petitioner's grounds for habeas-corpus relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary

Judgment, ECF No. 17, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

December 9, 2014                                 Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).